# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RICKY LEWIS,

      Plaintiff,

v.

HOWARD SKOLNIK, CHERYL BURSON, BRIAN WILLIAMS, LAVERT TAYLOR, GREGORY COX, AND CLARENCE KING, *et al*.,

      Defendants.

Case No. 2:09-CV-02393-KJD-GWF

**ORDER**

Currently before the Court is Defendants' Motion to Dismiss (#22) to which Plaintiff responded (#26).

**I. Background**

Plaintiff is an African-American Hebrew Israelite.  Plaintiff has been in the custody of the Nevada Department of Corrections ("NDOC") since May 5, 2009 and is incarcerated at the Southern Desert Correctional Center ("SDCC").  At the time of Plaintiff's intake and classification, he stated in his "Declaration of Faith" that his religion was Judaism.  After being transferred to SDCC Plaintiff signed an attendance sheet for worship on which he indicated his desire to be served kosher meals in conjunction with his religious beliefs.  After several weeks passed, Plaintiff was still not being served kosher meals.  Plaintiff was told he would be receiving these meals "any day."  Other African-American Jewish inmates complained through the formal grievance system.  After the other inmates complained, NDOC issued a new policy that limited service of kosher meals to inmates that could prove through a recognized, outside organization that they are Orthodox or Conservative Jews. Plaintiff then issued several complaints through the prison grievance system.  Plaintiff alleges that

1   this policy and the resulting deprivation of kosher meals violated his civil rights and that it was

2   implemented as an act of retaliation and discrimination.

3           Plaintiff filed a complaint on July 16, 2010.  Count I of the Complaint alleges that the

4   Defendants Director Skolnik, Associate Warden Burson, Deputy Director Cox, Warden Williams,

5   Chaplin Taylor, and Culinary Manager King (collectively "Defendants") violated Plaintiff's religious

6   rights pursuant to the First Amendment, RLUIPA, and Equal Protection via the Fourteenth

7   Amendment, and various Nevada State statutes by denying him kosher meals.  Plaintiff also seeks

8   damages for conspiracy to violate his federal rights pursuant to 42 USC § 1983.  Count II alleges that

9   Defendants racially discriminated against Plaintiff.  Count III of the Complaint alleges that the

10  Defendants violated Plaintiff's First, Eighth, and Fourteenth Amendment rights.  Count IV of the

11  Complaint alleges that the Defendants Williams, King and Taylor violated Plaintiff's First

12  Amendment right to redress and Fourteenth Amendment right to equal protection. Specifically,

13  Plaintiff alleges that King threatened to transfer all of the African-American Jews, and that King and

14  Taylor permitted other non-African-American Jewish inmates to read Plaintiff's grievances.

15  II.  Applicable Legal Standards

16          A.  Motion to Dismiss

17          In considering a motion to dismiss for failure to state a claim under FRCP 12(b)(6), "all well-

18  pleaded allegations of material fact are taken as true and construed in a light most favorable to the

19  non-moving party."  Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658,

20  661 (9th Cir.1998).  Consequently, there is a strong presumption against dismissing an action for

21  failure to state a claim.  See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir.1997) (citation

22  omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

23  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct.

24  1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plausibility, in

25  the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court

26  to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The

1   *Iqbal* evaluation illustrates a two prong analysis.  First, the Court identifies "the allegations in the

2   complaint that are not entitled to the assumption of truth," that is, those allegations which are legal

3   conclusions, bare assertions, or merely conclusory.  Id. at 1949–51.  Second, the Court considers the

4   factual allegations "to determine if they plausibly suggest an entitlement to relief."  Id. at 1951.  If the

5   allegations state plausible claims for relief, such claims survive the motion to dismiss.  Id. at 1950.

6       B.  *Pro Se* Pleadings

7       Courts must liberally construe the pleadings of *pro se* parties.  See United States v. Eatinger,

8   902 F.2d 1383, 1385 (9th Cir. 1990).  "Even given the more generous pleading standards for *pro se*

9   plaintiffs" a plaintiff must "provide [the] minimum factual basis needed to provide notice to [the]

10  defendants."  Turner v. County of Los Angeles, 18 Fed.Appx. 592, 596 (9th Cir.  2001).  *Pro se*

11  litigants must, at least, "provid[e] a defendant with notice of what it is that it allegedly did wrong."

12  Brazil v. U.S. Dept. of Navy, 66 F.3d 193, 199 (9th Cir. 1995).  A *pro se* complaint can be dismissed

13  if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which

14  would entitle him to relief."  Haines v. Kerner, 404 U.S. 519, 520-521.  (1972) (quoting  Conley v.

15  Gibson, 355 U.S. 41, 45-46 (1957)).

16      C.  42 USC. § 1983 Claims

17      Title 42 USC. § 1983 "provides a federal cause of action against any person who, acting

18  under color of state law, deprives another of his federal rights."  Conn v. Gabbert, 526 U.S. 286, 290

19  (1999).  § 1983 offers no substantive legal rights, but rather provides procedural protections for

20  federal rights granted elsewhere.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  To maintain a claim

21  under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal

22  Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting

23  under color of state law."  Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

24  //

25  //

26  //

3

III.  Analysis

    A.  Count I

        1.  First Amendment Claims

        For purposes of the instant motion, the sincerity of Plaintiff's religious beliefs is presumed. Incarcerated persons retain their First Amendment right to free exercise of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security. Id. These competing interests are balanced properly and the prison regulation is valid if it is reasonably related to legitimate penological interests. Id. (quoting Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987).  Plaintiff alleges that Defendants violated his First Amendment rights by denying him kosher meals because his faith was not verified by an outside entity as required by NDOC policy.  The relevant inquiry for purposes of the instant Motion is whether the *pro se* Plaintiff has pled facts that could show that the policy is not reasonably related to a legitimate penological interest.

        The Supreme Court has laid out four factors courts should balance to determine whether a prison regulation is reasonably related to legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89-90.  The Turner factors are: (1) whether there is a valid rational connection between the prison regulation and the legitimate government interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right will impact guards and other inmates or prison resources generally; and (4) whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives. See Roberts v. Klein, 770 F.Supp. 2d 1102, 12 (D. Nev. 2011) (citing Turner v. Safley, 482 U.S. 78, 89-90).

        Plaintiff has not pled any facts which demonstrate that the verification policy and consequent denial of kosher meals lacks a rational connection to a legitimate government interest.  Accordingly, the first Turner factor militates in favor of the policy since it rationally serves NDOC's legitimate

1  interest in orderly administration of the prison program to provide kosher meals.  See e.g. Resnick v.

2  Adams, 348 F.3d 763, 769 (9th Cir. 2003).

3        The Complaint provides facts sufficient to survive dismissal relating to the other three Turner

4  factors.  Specifically, Plaintiff has pled facts which could show that the policy is not reasonably

5  related to a legitimate penological interest because there are no alternative means available for him to

6  exercise his rights, the impact on the guards, other inmates, and prison resources is not significant,

7  and workable alternatives exist.  Defendants also represent that Plaintiff is now receiving kosher

8  meals and that the policy has or is being changed, further indicating that viable alternatives exist and

9  that accommodation is possible.  The Complaint contains facts that could show that the policy in

10  question does not serve a legitimate penological interest and that his First Amendment rights were

11  violated.  Accordingly, Plaintiff's claim for violations of his First Amendment rights survive.

12                  2.  Racial Discrimination Claims

13        The Equal Protection Clause "is essentially a direction that all persons similarly situated

14  should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105

15  S.Ct. 3249, 87 L.Ed.2d 313 (1985). "Prisoners are protected under the Equal Protection Clause of the

16  Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S.

17  539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). To state a viable claim under the Equal Protection

18  Clause, however, a prisoner "must plead intentional unlawful discrimination or allege facts that are at

19  least susceptible of an inference of discriminatory intent." Byrd v. Maricopa County Sheriff's Dep't,

20  565 F.3d 1205, 1212 (9th Cir. 2009) (quoting Monteiro v. Tempe Union High School District, 158

21  F.3d 1022, 1026 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in

22  part because of a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003)

23  (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)).

24        Plaintiff's complaint presents a plausible claim for unlawful discrimination.  Plaintiff claims

25  that the NDOC policy of requiring Plaintiff to obtain religious verification by an outside organization

26  prior to receiving kosher meals resulted in his being treated different than Christian, Muslim, or

1   Pagan inmates.  Plaintiff further claims that the verification policy to which he was subject was

2   implemented because the inmates seeking kosher meals were African-American.  The facts, as pled

3   by the Plaintiff, are susceptible to an inference of discriminatory intent and could plausibly state a

4   claim for relief, especially given the lenient standard applied to *pro se* parties.  See Brazil, 66 F.3d at

5   199.  Accordingly, Plaintiff's claim for discrimination pursuant to the Fourteenth Amendment

6   survives.

7                            3.  Conspiracy

8            To state a claim for a conspiracy to violate one's constitutional rights under 42 U.S.C. §

9   1983, a plaintiff must state specific facts to support the existence of the claimed conspiracy.  Burns v.

10   County of King, 883 F.2d 819, 821 (9th Cir.1989); see also Branch v. Tunnell, 937 F.2d 1382, 1386

11   (9th Cir. 1991) (when pleading a § 1983 claim requiring a showing of subjective intent, a plaintiff is

12   subject to a heightened pleading standard).  A complaint alleging a § 1983 conspiracy must allege

13   facts showing an agreement or meeting of the minds of the conspirators. See Woodrum v. Woodward

14   County, 866 F.2d 1121, 1126 (9th Cir. 1989). The complaint must also include "nonconclusory

15   allegations containing evidence of unlawful intent." See Branch, 937 F.2d at 1386.

16           Plaintiff's Complaint contains only the most bare and conclusory allegations of conspiracy.

17   There is no allegation of an agreement or meeting of the minds among the Defendants to violate

18   Plaintiff's constitutional rights and no facts evidencing the existence of a conspiracy.  Plaintiff fails

19   to state a viable conspiracy claim against any Defendant, and all conspiracy allegations should be

20   dismissed.

21                            4.  Violation of RLUIPA

22           RLUIPA provides in relevant part that "'no government shall impose a substantial burden on

23   the religious exercise of a person residing in or confined to an institution . . . even if the burden

24   results from the rule of general applicability', unless the government establishes that the burden

25   furthers 'a compelling governmental interest' and does so by 'the least restrictive means.'"

26   Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005)(citing 42 U.S.C. §2000cc-1(a)(1)-(2)).

1   RLUIPA defines "religious exercise to include 'any exercise of religion, whether or not compelled

2   by, or central to, a system of religious belief.'" Id. (citing 42 U.S.C. §2000cc-5(7)(A).

3           Defendants argue that, because Plaintiff is now receiving kosher meals and NDOC has since

4   changed or is in the process of changing its policy regarding kosher meals, Plaintiff's RLUIPA claim

5   is moot.  When arguing that a claim has become moot due to a voluntary change, a "defendant bears

6   the burden of showing that its voluntary compliance moots a case by convincing the court that 'it is

7   absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" Lozano

8   v. AT & T Wireless Services, Inc., 504 F.3d 718, 733 (9th Cir.2007).  Voluntary cessation of

9   challenged conduct renders a claim moot if "(1) it can be said with assurance that there is no

10  reasonable expectation that the alleged violation will recur, and (2) interim relief or events have

11  completely and irrevocably eradicated the effects of the alleged violation." County of Los Angeles v.

12  Davis, 440 U.S. 625, 631 (1979) (citations omitted).  A defendant's voluntary change in policy only

13  renders a claim moot if it is "'a permanent change' in the way it [does] business and [is] not a

14  'temporary policy that the agency will refute once this litigation has concluded.' " Smith v. Univ. of

15  Washington Law Sch., 233 F.3d 1188, 1194 (9th Cir.2000) (quoting White v. Lee, 227 F.3d 1214,

16  1243 (9th Cir.2000)).  Courts have made clear that this standard is stringent and that the burden to be

17  carried by the Defendant is "heavy" Lee, 227 F.3d at 1243 (quoting United States v. Concentrated

18  Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)).

19          In the instant case, Defendants have provided an affidavit indicating that Plaintiff is now

20  receiving kosher meals.  The affidavit also represents that the NDOC will implement the Virginia

21  Common Fare Diet, a plan designed to meet the religious dietary restrictions of inmates.  This

22  affidavit, without more, does not meet the heavy burden imposed on defendants arguing mootness.

23  See Seneca v. Ariz., 345 Fed. Appx. 226, 228 (9th Cir. 2009) (affidavit attesting a prison's voluntary

24  policy change was insufficient to moot plaintiff's claims under RUILPA)).

25          Plaintiff has pled adequate facts to show that the policy withholding kosher meals absent

26  outside verification of his faith may not be the least restrictive means to further a compelling

7

1   governmental interest. (See section on First Amendment claims supra.) The Defendants have not met

2   their burden to show that this claim is moot.  Accordingly, Plaintiff's RUILPA claims cannot be

3   dismissed as moot without more assurance from Defendants that the voluntary change in policy

4   allowing Plaintiff to receive kosher meals is a permanent change.

5                    5.  RLUIPA Damages

6          The Ninth Circuit has recently held that RLUIPA does not authorize monetary damages

7   against defendants in their official capacities.  Holley v. Cal. Dep't of Corrections, 599 F.3d 1108,

8   1112 (9th Cir. 2010).  Although the Ninth Circuit has not ruled on the issue, courts in this District

9   have followed the Eleventh, Fifth, Fourth, and Seventh Circuits in holding that state officials cannot

10  be held liable in their individual capacities under RLUIPA.  See Burriola v. State of Nevada, 2010

11  WL 2326118 *13 (D. Nev. 2010) (citing Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007); Sossamon

12  v. Lone Star State of Texas, 560 F.3d 316, 325 (5th Cir. 2009); Rendelman v. Rouse, 569 F.3d 182,

13  184 (4th Cir. 2009); Nelson v. Miller, 570 F.3d 868, 883-885 (7th Cir. 2009)).       Accordingly,

14  Plaintiff's claims for damages under RLUIPA are dismissed.

15                 6.  Nevada Revised Statutes: 197.200 and 212.020

16         Plaintiff alleges that the Defendants violated his rights under NRS §212.020 and NRS

17  197.200.  Courts have long held that, unless an exception exists, "'criminal statutes cannot be

18  enforced by civil actions.'"  Collins v. Palczewski, 841 F.Supp. 333, 340 (D.Nev. 1993)(quoting

19  Bass Angler Sportsman Soc. v. United States Steel Corp., 324 F.Supp. 412, 415 (S.D. Ala.

20  1971)(citation omitted); United States v. Jourden, 193 F. 986, 3 Alaska Fed. 770 (9th Cir. 1912)).

21  NRS § 212.020 provides the classification of the offense of inhumanity to prisoners.  NRS § 197.200

22  provides protection to the general population of Nevada against the oppressive, injurious or

23  confiscatory actions of state officers acting under the color of state law. Both of these sections are

24  strictly criminal in nature and no exception applies.  Collins, 841 F.Supp. at 340.

25

26

1      Accordingly, Plaintiff's state law claims brought under NRS § 212.020 and NRS § 197.200

2  are dismissed.

3      C.  Count II: Retaliation Claims

4      Allegations of retaliation against a prisoner for exercising his civil rights to speech or to

5  petition the government may support a claim under § 1983.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th

6  Cir.1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir.1989).  There are five

7  elements of a "viable claim of First Amendment retaliation" in the prison context: "(1) [a]n assertion

8  that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

9  protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

10  rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v.

11  Robinson, 408 F.3d 559, 567–68 (9th Cir.2005).

12      Plaintiff fails to plead facts sufficient to show that he was retaliated against for exercising his

13  civil rights.  Although Plaintiff claims that other inmates complained prior to the implementation of

14  the policy at issue, Plaintiff states that he personally filed grievances only after the allegedly

15  retaliatory action took place.  The complaint fails to establish the second element of the test laid out

16  in Rhodes since adverse action cannot precede a plaintiff's protected conduct.  See e.g. McDonald v.

17  Hall, 610 F.2d 16, 18 (1st Cir. 1979) (a plaintiff must aver a plausible chronology of events to

18  survive a motion to dismiss).  Accordingly, the retaliation claims in Count II are dismissed.

19      D.  Count IV: First Amendment Right to Redress Grievances and Fourteenth Amendment

20      Right to Equal Protection of the United States Constitution

21      The Prison Litigation Reform Act of 1996 ("PLRA") provides that "[n]o action shall be

22  brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a

23  prisoner confined in any jail, prison, or other correctional facility until such administrative remedies

24  as are available are exhausted."  42 U.S.C. § 1997e(a) (2002).  Failure to exhaust administrative

25  remedies is an affirmative defense and the defendants bear the burden of raising and proving failure

26  to exhaust.  Jones v. Bock, 549 U.S. 199, 212-14 (2007).  Proper exhaustion requires that the

9

1  plaintiff utilize all steps made available by the agency and comply with the agency's deadlines and

2  other procedural rules.  Woodford v. Ngo, 548 U.S. 81, 89-90 (2006).  Proper exhaustion must be

3  completed before a complaint may be filed.  Id. at 83-84.  See Roberts v. Klein, 770 F. Supp. 2d

4  1102 (D. Nev. 2011).

5        The record of Plaintiff's grievances shows that he failed to exhaust his administrative

6  remedies on all the claims listed in Count IV of his complaint.  (#5 at 29-40).  Specifically, Plaintiff

7  did not appropriately grieve complaints for violations of his First Amendment right to redress of his

8  grievances and his Fourteenth Amendment right to equal protection.  Plaintiff cannot properly raise

9  these claims for first time in this action.  Accordingly, Count IV of the complaint is dismissed.

10              E. Qualified Immunity

11        Government officials exercising discretionary functions generally enjoy qualified immunity

12  from personal liability for actions within the scope of their official duties.  See Harlow v. Fitzgerald,

13  457 U.S. 800, 807 (1982).  Qualified immunity applies unless a defendant's conduct violated "clearly

14  established statutory or constitutional rights of which a reasonable person would have known."  Hope

15  v. Pelzer, 536 U.S. 730, 752 (2002) (internal quotation omitted).  Originally, in order to determine

16  whether a government official is entitled to qualified immunity, a court first had to address whether,

17  taken in the light most favorable to the party asserting the injury, the facts alleged show the

18  defendant violated a statutory or constitutional right.  See Resnick v. Adams, 348 F.3d 763, 766-67

19  (9th Cir. 2003).   If "a violation could be made out" the court then had to decide whether the right

20  was clearly established.  Id.  "The plaintiff bears the burden of showing that the right he alleges to

21  have been violated was clearly established."  Collins v. Jordan, 110 F.3d 1363, 1369 (9th Cir. 1996).

22  A clearly established right is one whose "contours ... must be sufficiently clear that a reasonable

23  official would understand what he is doing violates that right."  Anderson v. Creighton, 483 U.S.

24  635, 640 (1987).  The right is clearly established if "it would be clear to a reasonable officer that his

25  conduct was unlawful in the situation he confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001).

26  The exact action need not have been held unlawful, but "in light of pre-existing law the unlawfulness

1  must be apparent." <u>Anderson</u>, 483 U.S. at 640 (internal citations omitted).  This evaluation must be

2  "in light of the specific context of the case, not as a broad general proposition."  <u>Saucier</u>, 533 U.S. at

3  201.  An objective standard applies.  <u>Harlow</u>, 457 U.S. at 818-19.  Additionally, the right must be

4  clearly established at the time of the allegedly impermissible conduct.  <u>Camarillo v. McCarthy</u>, 998

5  F.2d 638 (9th Cir. 1993).

6       Recently, however, the Supreme Court determined that the two-step sequence set out in

7  <u>Saucier</u>, while often appropriate, "should no longer be regarded as mandatory."  <u>Pearson v. Callahan</u>,

8  129 S.Ct. 808, 818 (2009).  A district court is permitted to exercise its "sound discretion" in deciding

9  which prong should be addressed first "in light of the circumstances" of the particular case.  <u>Id</u>.

10       In this case, Plaintiff not only alleges that Defendants denied him kosher meals by instituting

11  a policy that required outside verification of his faith, but that their motivation for doing so was

12  based on the race of the persons requesting the kosher meals.  Any reasonable official would know

13  that enacting and enforcing a policy denying a form of religious worship for race-based reasons

14  violates a clearly established right.   Assuming the truth of these allegations, as the Court must for

15  purposes of this motion, Defendants are not immune from suit in their individual capacities.

16  <u>IV.  Conclusion</u>

17       Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (#22) is

18  **GRANTED** as to Count IV and to Plaintiff's conspiracy claims, retaliation claims, state law claims,

19  and claims for damages pursuant to RLUIPA.

20       **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (#22) is **DENIED** as to

21  all other claims in the Complaint.

22       DATED this 10th day of August 2011.

23

24  _____

25  Kent J. Dawson
    United States District Judge

26

11