# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RICKY LEWIS,

    Plaintiff,

v.

HOWARD SKOLNIK, *et al.*,

    Defendants.

Case No. 2:09-CV-02393-KJD-GWF

**ORDER**

    Before the Court is the Motion for Summary Judgment (#42) filed by Defendants Cheryl Burson, Greg Cox, Clarence King, Howard Skolnik, Lavert Taylor, and Brian Williams. Plaintiff Ricky Lewis filed an opposition (#44) and Defendants filed a reply (#45).

    Also before the Court is Plaintiff's Order to Show Cause for a Preliminary Injunction (#50) and Temporary Restraining Order (#49). Defendants have responded (#51) and Plaintff has replied (#53).

I. Background

    Plaintiff is an African-American inmate who identifies himself as belonging to a sect of Judaism known as the Hebrew Israelites. Plaintiff has been in the custody of the Nevada Department

of Corrections ("NDOC") since May 5, 2009, and at all relevant times was incarcerated at the Southern Desert Correctional Center ("SDCC").  At the time of Plaintiff's intake and classification, he stated in his "Declaration of Faith" that his religion was Judaism and Plaintiff signed an attendance sheet for worship on which he indicated his desire to be served kosher meals in conjunction with his religious beliefs.

Several weeks after this request, Plaintiff was still not being served kosher meals.  Plaintiff was told he would be receiving these meals "any day."  Other African-American Jewish inmates complained through the formal grievance system.  After the other inmates complained, NDOC issued a new Policy ("the Policy") that restricted service of kosher meals to inmates that could prove through a recognized, outside organization that they are Orthodox or Conservative Jews.  Plaintiff made several complaints via the prison grievance system which gave rise to this lawsuit.

Plaintiff alleges that the policy and the resulting deprivation of kosher meals violated his civil rights and that it was implemented as an act of retaliation and discrimination.

II.  Discussion

A.  Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual dispute for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party must produce specific facts, by affidavit or other evidentiary materials similar to those described in Rule 56, to show that there is a

genuine dispute for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Summary judgment motions can only be defeated by admissible evidence.  In re: Oracle Corporation Securities Litigation, 627 F.3d 376, 385 (9th Cir. 2010).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."  Nilsson v. City of Mesa, 503 F.3d 947, 952 n. 2 (9th Cir. 2010) (citation omitted).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

B. Pro Se Pleadings

Plaintiff is representing himself pro se.  Courts must liberally construe the pleadings of pro se parties.  See United States v. Eatinger, 902 F.2d 1383, 1385 (9th Cir. 1990).  However, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record."  Jacobsen v. Filler, 790 F.2d 1362, 1364 (9th Cir.1986).

C.  42 USS § 1983 Claims

Title 42 USC. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  Conn v. Gabbert, 526 U.S. 286, 290 (1999).  Section 1983 offers no substantive legal rights, but rather provides procedural protections for federal rights granted elsewhere.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law."  Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

D.  Exhaustion

Prisoners seeking relief under Section 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); Jones v. Bock, 549 U.S. 199, 212 (2007), citing Porter v. Nussle, 534 U.S. 516, 524 (2002) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001).

The failure to exhaust is an affirmative defense and a defendant bears the burden of raising and proving failure to exhaust. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.2003). Failure to exhaust administrative remedies is treated as a matter in abatement, and is properly raised in an unenumerated 12(b) motion to dismiss. Id.; see Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir.1988).  As such, failure to exhaust is not properly raised in a motion for summary judgment, but if it is so raised, it should be treated as a motion to dismiss. Ritza, 837 F.2d at 368 (citations omitted). If the court ultimately finds that Plaintiff has not exhausted his nonjudicial remedies, the proper remedy is dismissal of his claims without prejudice. O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1059 (9th Cir.2007) (citing Wyatt, 315 F.3d at 1119–20); see Ritza, 837 F.2d at 368.

A prison inmate in Nevada satisfies the administrative exhaustion requirement by following the procedures set forth in NDOC Administrative Regulation 740. This regulation sets forth time frames for the filing of grievances and warns that "[f]ailure by the inmate to submit a proper Informal Grievance form" within this time frame "shall constitute abandonment" of the inmate's right to pursue resolution of that claim at any level of the inmate grievance procedure.  See Woodford v. Ngo, 548 U.S. 81, 89 (2006). ("Proper exhaustion" means "using all steps the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).")

4

1    Defendants argue, without any citation to authority, that they are entitled to summary
2 judgment on any claims where Plaintiff failed to properly exhaust his administrative remedies.
3 However, summary judgment based on failure to exhaust is not appropriate and the Court construes
4 Defendants' arguments as an unenumerated Rule 12 motion.

5    The Complaint in this action was filed on July 16, 2010.  Prior to that time Plaintiff filed
6 three grievances which address the Policy, kosher meals, and/or discrimination.  One of these
7 complaints was rejected as duplicative pursuant to NDOC policy.  Accordingly, only issues raised in
8 Grievance No. 2006-28-82960 and Grievance No. 2006-28-95565 have been properly exhausted.
9 Specifically, Plaintiff has only exhausted his administrative remedies for claims that he was denied
10 kosher meals between September 24, 2009 and October 2010 as a result of NDOC's policy of
11 denying kosher meals to inmates who failed to obtain outside verification of their Jewish faith.
12 Accordingly, all other claims are dismissed.

13    A. Defendants' Official Capacity Immunity

14    Defendants argue that Plaintiff's claims for monetary damages under federal civil rights
15 statutes against the Defendants in their official capacity are barred by the state sovereign immunity
16 recognized by the Eleventh Amendment.  See e.g., Taylor v. List, 880 F.2d 1040, 1045 (9th
17 Cir.1989); Cardenas v. Anzal, 311 F.3d 929, 934-35 (9th Cir.2002).  In his response, Plaintiff
18 concedes this point.  (#31 at 4.)  Accordingly, all claims against the Defendants in their official
19 capacities are dismissed.

20    D.  Standing

21    In the Ninth Circuit, "[t]here is a long line of cases . . . that hold that a plaintiff lacks standing
22 to challenge a rule or policy to which he has not submitted himself by actually applying for the
23 desired benefit." Madsen v. Boise State University, 976 F.2d 1219, 1220 (9th Cir.1992) (citations
24 omitted). A central reason for this requirement is to ensure that the challenged policy actually
25 affected the person challenging it. Id. at 1221-22.

26

5

Defendants argue that Plaintiff lacks standing because he did not attempt to comply with the Policy requiring him to "prove through a recognized outside organization that [he is an] Orthodox or Conservative Jew and follow the policies and procedures outlined" by NDOC for obtaining verification. However, Plaintiff, who identifies as neither Orthodox nor Conservative, is not claiming that he was denied verification. His claim is that he was denied kosher meals, which is the benefit at issue in this case. It is undisputed that Plaintiff sought to receive kosher meals, and NDOC's policy of denying kosher meals according to the Policy undoubtedly affected Plaintiff. Accordingly, he has standing in this case and summary judgment on this basis is denied.

E. Deprivation of First Amendment Free Exercise of Religion Rights

Incarcerated persons retain their First Amendment right to free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security. Id.

"[T]o merit protection under the free exercise clause of the First Amendment," "[a] religious claim," "must satisfy two basic criteria." Callahan v. Woods, 658 F.2d 679, 683 (9th Cir.1981). "First, the claimant's proffered belief must be sincerely held[.]" Id. Second, "the claim must be rooted in religious belief, not in 'purely secular' philosophical concerns." Id. Further, in order to establish a First Amendment violation, a prisoner must demonstrate that defendants have burdened the practice of his religion without any justification reasonably related to legitimate penological interests. See Freeman v. Arpaio, 125 F.3d 732, 737 (1997), abrogated on other grounds by Shakur v. Schririo, 514 F.3d 878, 884 (2008) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). Prison authorities are not obligated to provide a special diet if an inmate is not sincere in his religious beliefs. McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir.1987). The Ninth Circuit has joined other courts in holding that "sincerity of . . . alleged religious belief cannot be determined without a factual determination." Parks v. Brooks, 302 Fed.Appx. 611, 612 (9th Cir. 2008) (reversing summary judgment based on finding that belief in the need for a kosher diet was not sincerely held); see also

6

Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 983 (8th Cir.2004); Mosier v. Maynard, 937 F.2d 1521, 1526 (10th Cir.1991).

Defendants assert, without any citation to authority, that they are entitled summary judgment on the issue of whether Plaintiff is sincere in his religious beliefs. According to Defendants, Plaintiff's religious beliefs regarding kosher food are not sincerely held because, at his deposition, Plaintiff admitted that he would have no problem eating a cheeseburger, and was not familiar with some aspects associated with a kosher diet, such as the slaughter of kosher animals.[1] At summary judgment, the Court cannot resolve the factual issues surrounding the sincerity of Plaintiff's religious beliefs or their relation to his desire for kosher meals. Similarly, Defendants have offered nothing more than a bare assertion that denying kosher meals to Plaintiff is reasonably related to legitimate penological interests. This latter argument is particularly disingenuous since it is undisputed that kosher meals are served to other inmates. Accordingly, Plaintiff's claims survive summary judgment.

E. RLUIPA

RLUIPA provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000c–5(7)(A). To establish a RLUIPA violation, the plaintiff bears the initial burden to prove that official conduct places a "substantial burden" on his "religious exercise." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th

---

[1] The Ninth Circuit has acknowledged that one of the fundamental aspects of a kosher diet is that "[d]airy and meat products cannot mix and may not be consumed at the same meal." Ward v. Hatcher, 1999 WL 109669, 1 (9th Cir. 1999).

7

1  Cir.2005). Once the plaintiff establishes a substantial burden, defendants must prove that the burden
2  both furthers a compelling governmental interest and is the least restrictive means of achieving that
3  interest. Id. at 995. RLUIPA is to be construed broadly in favor of the inmate. See 42 U.S.C. §
4  2000cc–3(g).
5        A plaintiff cannot recover monetary damages under RLUIPA. The Fourth, Fifth, Seventh, and
6  Eleventh Circuits have concluded that a plaintiff cannot assert a RLUIPA claim for damages against
7  defendants in their individual capacity. See Birdwell v. Cates, No. CIV S–10–0719 KJM GGH P,
8  2012 WL 1641964, at * 9 (E.D.Cal. May 9, 2012) (citing Rendelman v. Rouse, 569 F.3d 182,
9  187–89 (4th Cir.2009); Nelson v. Miller, 570 F.3d 868, 886–89 (7th Cir.2009); Sossamon v. Lone
10 Star State of Texas, 560 F.3d 316, 327–29 (5th Cir.2009); Smith v. Allen, 502 F.3d 1255, 1271–75
11 (11th Ci r.2007). "These Circuits concluded that Congress enacted RLUIPA pursuant to the
12 Spending Clause and did not indicate with sufficient clarity an intent to condition the state's receipt
13 of federal funds on the creation of an individual capacity action for damages; moreover, a contrary
14 reading of the statute would raise serious constitutional concerns about the extent of Congress'
15 authority under the Spending Clause." Birdwell, 2012 WL 1641964, at * 9.
16       Plaintiff cannot seek injunctive relief based on conduct related to the instant litigation
17 because the Policy which was the subject of his exhausted grievances has been rescinded and
18 Plaintiff's receipt of kosher meals is no longer dependant on compliance with the Policy.  Further,
19 Plaintiff cannot recover under RLUIPA against Defendants for money damages.  Accordingly,
20 summary judgment on the issue of damages under RLUIPA is granted in favor of Defendants.
21       F.  Equal Protection
22       The Equal Protection Clause "is essentially a direction that all persons similarly situated
23 should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439
24 (1985). The Equal Protection Clause of the Fourteenth Amendment prohibits invidious
25 discrimination against prisoners based on a protected status.  Wolff v. McDonnell, 418 U.S. 539, 556
26 (1974). To state a viable claim under the Equal Protection Clause, however, a prisoner "must plead

intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205, 1212 (9th Cir. 2009) (quoting Monteiro v. Tempe Union High School District, 158 F.3d 1022, 1026 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)).

### 1. Racial Discrimination

To avoid summary judgment on a racial discrimination claim, a plaintiff "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated." Bingham v. City of Manhattan Beach, 329 F.3d 723, 732 (9th Cir.2003) (citations and alterations omitted).

The Policy is facially race neutral. Plaintiff has not met his burden to show evidence suggesting that the Policy was racially motivated or was applied in a racially discriminatory manner. Plaintiff only offers self-serving affidavits and conclusory argument to support his position. This is not enough to create an issue of fact sufficient to survive Defendants' motion for summary judgment. Accordingly, summary judgment is granted on the equal protection racial discrimination claim.

### 2. Religious Discrimination

To survive summary judgment on a religious discrimination claim, a plaintiff "must set forth specific facts showing that there is a genuine issue as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths and that such conduct was intentional." Freeman, 125 F.3d at 737 (quotations omitted).

The Policy states:

> Per order from Deputy Director Greg Cox, the recent policy of approving Kosher meals for inmates that are not verified Orthodox or Conservative Jew (sic) is rescinded. Effective September 24, 2009 with the noon meal, you will no longer be served the kosher diet.
>
> Effective immediately, the NDOC will only serve the Kosher meals to inmates that can prove through a recognized outside organization that they

9

>are Orthodox or Conservative Jew (sic) and follow the policies and procedures outlined in A.R. 810.

The language of the Policy appears to prevent Plaintiff from pursuing his faith as compared to prisoners of other faiths. Specifically, the Policy forbids anyone other than Orthodox or Conservative Jews who have been certified by an outside organization from obtaining kosher meals. Plaintiff asserts that he is a "Hebrew Israelite," which he claims is a sect of Judaism that is neither Orthodox nor Conservative. This creates a genuine issue of fact about whether Plaintiff was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths. Accordingly, Defendants' motion for summary judgment on the religious discrimination Equal Protection claim is denied.

### 3. Due Process

Defendants argue, based on Plaintiff's testimony, that the Due Process claim is duplicative of the Equal Protection claim and the First Amendment claim. Plaintiff fails to provide any argument opposing summary judgment on the Due Process claim. Accordingly, summary judgment is granted in favor of Defendants on the Due Process Claim.

### G.  Personal Participation

For a defendant to be held liable under Section 1983, the plaintiff must demonstrate that the defendant personally participated in the alleged denial of rights. Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 663 n. 7 (1978). There can be no liability under § 1983 based on *respondeat superior* or other theories of vicarious liability. Id. See also Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002). Liability under Section 1983 attaches only upon personal participation by a defendant in the constitutional violation. List, 880 F.3d at 1045. A supervisor may be liable for constitutional violations of subordinates, however, if the supervisor participated in, directed, or knew of the violations and failed to act to prevent them. Id.

Plaintiff offers nothing but self-serving and conclusory affidavits to support his assertion that Defendants Cheryl Burson, Clarence King, Howard Skolnik, and Brian Williams personally

participated in any intentional discrimination amounting to a constitutional violation.  Plaintiff has raised an issue of fact regarding the personal participation of Defendant Greg Cox, because the memorandum announcing the Policy indicates that the Policy was issued at his direction. Similarly, Plaintiff has raised an issue of fact about participation by Lavert Taylor, because he denied Plaintiff's informal grievance regarding denial of kosher meals.  Summary judgment on all Section 1983 claims is granted in favor of Defendants Cheryl Burson, Clarence King, Howard Skolnik, and Brian Williams because Plaintiff has failed to show a dispute of fact about personal participation by these Defendants.  Summary judgment is denied as to Defendants Greg Cox and Defendants Lavert Taylor.

### H. Qualified Immunity

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity applies "regardless of whether the government official's error is mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (citation omitted).

In addressing qualified immunity, a court must determine (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right, and (2) whether that right was "clearly established." Cmty. House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 967 (9th Cir.2010) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001), modified by Pearson, 555 U.S. 223). Addressing the two prongs of the test in this order is often beneficial, but it is not mandatory. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Cmty. House, Inc., 623 F.3d at 967; see also Pearson, 555 U.S. 235.

"The plaintiff bears the burden of showing that the right he alleges to have been violated was clearly established." Collins v. Jordan, 110 F.3d 1363, 1369 (9th Cir. 1996).  A clearly established

right is one whose "contours . . . must be sufficiently clear that a reasonable official would understand what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987) The exact action need not have been held unlawful, but "in light of pre-existing law the unlawfulness must be apparent." Id. 483 U.S. at 640 (internal citations omitted). This evaluation must be "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. An objective standard applies. Harlow, 457 U.S. at 818-19. Additionally, the right must be clearly established at the time of the allegedly impermissible conduct. Camarillo v. McCarthy, 998 F.2d 638 (9th Cir. 1993).

### 1. Violation of a Constitutional Right

A dispute of fact exists as to whether Plaintiff's religious beliefs were sincerely held. That dispute is connected with the issue of whether Defendants' conduct violated a constitutional right. Accordingly, summary judgment is not appropriate on this prong of the qualified immunity analysis.

### 2. Whether the Right was Clearly Established

The material facts surrounding issuance of the Policy and denial of Plaintiff's grievances pursuant to the Policy are not in dispute. The Policy affords verified Orthodox or Conservative Jewish inmates more opportunity to practice their faith by being served kosher meals. It is clearly established that the First and Fourteenth Amendments require that similarly situated inmates be "afforded a reasonable opportunity to pursue [their] faith as compared to prisoners of other faiths." Freeman, 125 F.3d at 737. Accordingly, the right at issue is clearly established and Defendants are not entitled to summary judgment on the issue of qualified immunity.[2]

---

[2] Defendants, citing the Eighth Circuit case Montano v. Hedgepeth, argue that Taylor is immune because he is a chaplain. However, the Eighth Circuit stated that a chaplain is only immune when he is acting in a clerical capacity and any administrative and managerial tasks the chaplain was required to perform "would clearly be fairly attributable to the state." 120 F.3d 844, 849 (8th Cir. 1997) Here, Taylor denied Plaintiff's informal grievance, which was filed according to NDOC policies. Administering the prison grievance system is not a religious task and Taylor is not entitled to qualified immunity for this act based on his position as chaplain.

I. Damages

The Prison Litigation Reform Act provides that "[n]o federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "Section 1997e(e) only restricts the availability of certain types of relief (monetary damages in some instances), while leaving open the possibility of nominal and punitive damages. . . . Section 1997e(e) [does] not bar claims entirely, but merely restrict[s] the available types of relief. Myron v. Terhune, 225 Fed.Appx. 434, 436,(9th Cir. 2007) (citing Oliver v. Keller, 289 F.3d 623, 630 (9th Cir.2002)).

Punitive damages only available where an officer's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Dubner v. City and County of San Francisco, 266 F.3d. 959, 969 (9th Cir. 2001) (quotations omitted). "Officers [are] not obligated to come forward with evidence showing that they did not have nefarious motives or act with reckless indifference." Id.

Plaintiff does not claim any physical injury or provide any facts evidencing evil motive or reckless indifference. Accordingly, summary judgment is granted in favor of Defendants for any claim of damages other than nominal damages.

III. Injunctive Relief

Plaintiff's motions seeking injunctive relief (##49,50) allege that he has not been receiving a kosher diet at Lovelock Correctional Facility, where he has been transferred. Plaintiff claims that on June 15, 2012, he stopped receiving kosher meals because he refused to join the class in Howard Ackerman v. Nevada Department of Corrections, et. al., No. 2:11-cv-00883-GMN-PAL, a pending class action which alleges that the "common fare" diet served within NDOC is not kosher.

As stated previously, Plaintiff has only exhausted his administrative remedies for claims that he was denied kosher meals between September 24, 2009, and October 2010, as a result of NDOC's policy of denying kosher meals to inmates who failed to obtain outside verification of their Orthodox or Conservative Jewish faith. Accordingly, Plaintiff's request for injunctive relief is denied. See

13

Mulholland v. Holliday,  2000 WL 1843862, 1 (9th Cir. 2000) (affirming denial of injunctive relief where plaintiff failed to exhaust administrative remedies).  If Plaintiff wishes to address Lovelock Correctional Facility's denial of kosher meals based on failure to join the Ackerman class action, he may do so through the NDOC grievance process and separate litigation.

IV. Conclusion

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#42) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiff's motions seeking injunctive relief (##49,50) are **DENIED**.

DATED this 16h day of January 2013.

_____
Kent J. Dawson
United States District Judge